UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
DEURY ROSARIO,                                          :
                   Petitioner,                      :
                                 :      **OPINION AND ORDER**
v.                                                      :
                                 :      20 CV 5475 (VB)
DARWIN LACLAIR, Superintendent,                         :
                   Respondent.                      :
----------------------------------------------------------------x

Briccetti, J.:

       Petitioner Deury Rosario, proceeding pro se and in forma pauperis, petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his judgment of conviction, following a jury trial, of attempted assault in the first degree, criminal possession of a weapon in the second degree, reckless endangerment in the second degree, and obstructing governmental administration in the second degree. Also before the Court is petitioner's motion for leave to amend the petition to add six additional grounds for relief. (Doc. #20).

       For the reasons set forth below, the petition for a writ of habeas corpus and the motion for leave to amend the petition are DENIED.

       The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

**BACKGROUND**

       The following factual and procedural background is drawn from the petition, the parties' briefing in support of and in opposition to the petition, respondent's exhibits, and the pre-trial and trial record below.

I.     The Crime

       On the night of August 25, 2016, at approximately 11:00 p.m., petitioner arrived with a friend at a bar called the Tex-Mex Café in Yonkers, New York (the "Tex-Mex"). Witnesses

1

described petitioner as having long dreadlocks and wearing a baseball cap, a gray t-shirt, jeans, and sneakers.

Approximately twenty to thirty other people were at the Tex-Mex during the course of the night, including patrons and employees. Among the patrons was Yonkers Police Detective Vincent DiDio, who was off duty at the time.

That night, a man named Michael Winchester was working as the Tex-Mex's bouncer. Winchester was responsible for both maintaining security in the bar and conducting searches of individuals at the door as they entered. Winchester was not authorized to carry a gun in this position.

When petitioner arrived, Winchester searched and pat-frisked him. It is undisputed Winchester did not find a weapon on petitioner when he first arrived at the Tex-Mex. However, a Yonkers Police Officer, Thomas Burke, testified that while he was on patrol in the area, he saw petitioner walking on the street outside the bar at approximately 2:00 a.m. on August 26, 2016. At trial, the prosecution argued Officer Burke's testimony established that petitioner left and reentered the bar at least once over the course of the night. Winchester testified he was not at the door the entire night and may not have searched petitioner if or when he reentered the Tex-Mex.

At approximately 3:00 a.m., petitioner got into a verbal altercation with a woman at the bar. Seeing the argument, Winchester approached petitioner and asked him to leave. Winchester and petitioner then began to argue, at which point Winchester grabbed petitioner and lifted him by the waist, carrying him toward the front entrance of the Tex-Mex. According to Winchester and other eyewitnesses, petitioner's arms were free at his sides. While Winchester was carrying him, petitioner reached toward his waistband or ankle and raised his arm up. A gunshot then rang out right by Winchester's left ear.

Winchester turned and observed petitioner with a gun in his hand, pointing it in the direction of Winchester's head. Winchester dropped petitioner and two more shots were fired, which struck the ceiling of the bar. A struggle then ensued between Winchester and petitioner, during which the two fell to the floor and Winchester yelled at petitioner to drop the gun.

When the gunshots were fired, Detective DiDio was at the bar close to the front entrance of the Tex-Mex. Hearing gunshots, DiDio began pushing patrons away from the direction of the gunfire, drew his own weapon, and quickly approached Winchester and petitioner, who were still struggling. DiDio testified petitioner was holding a gun at this point. DiDio identified himself as a law enforcement officer and repeatedly ordered petitioner to drop the weapon. At the same time, DiDio instructed people at the back of the bar to call 911. Winchester eventually got control of the gun and passed it to DiDio, who put it in his pocket. Petitioner and Winchester continued to fight.

Almost immediately after DiDio took possession of the gun, Officer Burke and Officer Anthony Intervallo responded to the scene. Burke testified that at approximately 3:00 a.m., he and Intervallo had been on patrol very close to the Tex-Mex when they received a radio run about shots fired. It took the officers approximately two minutes from the radio run to arrive at the scene.

When Burke entered the Tex-Mex, he saw petitioner and Winchester fighting on the floor, and he and Intervallo identified themselves as police officers. DiDio, whom Burke had known for several years through the Yonkers Police Department, immediately told Burke to

arrest the man in the gray shirt on the floor.  DiDio told Burke petitioner had used a gun, which DiDio pulled out from his pocket and turned over to Burke.[1]

Officers Burke and Intervallo approached petitioner and placed him in handcuffs.  At that point, Winchester told the officers petitioner had fired a gun and might have another gun on him. Burke and Intervallo pat-frisked petitioner but did not find a gun on him.  At a pre-trial hearing, Burke testified that other than identifying themselves as police officers, he and Intervallo had not said anything to DiDio or Winchester to elicit their statements about petitioner.

II.    Procedural History

Petitioner was arrested and charged in Westchester County Court (the "trial court") with attempted assault in the first degree, in violation of N.Y. Penal Law §§ 110, 120.10; two counts of criminal possession of a weapon in the second degree, in violation of N.Y. Penal Law §§ 265.03(1)(b), (3); reckless endangerment in the first degree, in violation of N.Y. Penal Law § 120.25; menacing in the second degree, in violation of N.Y. Penal Law § 120.14; and obstructing governmental administration in the second degree, in violation of N.Y. Penal Law § 195.05.

A.    Pre-Trial Proceedings

During pre-trial proceedings, petitioner's counsel requested petitioner be referred for an evaluation of his competency to assist in his own defense, pursuant to N.Y. Crim. Proc. Law Article 730.  Petitioner was found incompetent to proceed.  During the time petitioner was deemed incompetent, defense counsel filed a motion and affidavit which contained certain factual statements based on counsel's discussions with petitioner.  After treatment and renewed

---

[1]    The gun was later identified as a .38 caliber Taurus revolver, and inside the gun were two live rounds and three spent shell casings.

evaluation, petitioner was later deemed restored to competency and fit to proceed.  At some point during these proceedings, petitioner obtained new counsel.  The case was eventually scheduled for a jury trial.

On October 17, 2017, the trial court held pre-trial hearings pursuant to United States v. Wade, 388 U.S. 218 (1967) ("Wade"); and People v. Sandoval, 34 N.Y.2d 371 (1974) ("Sandoval").  During the Wade hearing, the trial court heard testimony and arguments regarding petitioner's motion to suppress the point-out identifications that DiDio and Winchester had made of petitioner in their statements to Officers Burke and Intervallo when they arrived at the scene of the Tex-Mex.  The only witness at the hearing was Officer Burke.  On the record and in a subsequent written order, the trial court denied petitioner's motion to suppress, finding the identifications were not pre-arranged but rather made "by protagonists simultaneously and spontaneously" and "during the commission of the alleged crime."  (Doc. #15-3 at 2).

During the Sandoval hearing, the trial court considered whether the prosecution could introduce evidence of petitioner's prior bad acts, including previous criminal conduct.  In addition, the prosecution argued they should be able to introduce evidence that in August 2013, outside a bar "just down the street" from the Tex-Mex, petitioner had been the victim of a gunshot wound.  (Doc. #16-1 ("Hearing Tr.") at 23).[2]  The prosecution contended that if petitioner should testify and "suggest in any way that he has no motive or reason to carry a gun or possess a gun in Yonkers, or have or want a gun," the prosecution should be able to ask about the shooting to impeach petitioner's credibility.  (Id.).  The prosecution recognized the evidence was "not really a prior bad act," (id. at 24), but it wanted to raise the issue in advance of trial "so

---

[2]    Citations to "Hearing Tr. at __" refer to the page number at the top right-hand corner of each transcript page in the record of the trial court's pre-trial hearings.

there's no argument later about the propriety of the question" (id. at 23).  The trial court held the prosecution could not ask petitioner about his prior criminal conduct but, if petitioner took the stand and opened the door, the court would revisit the question of the gunshot-victim evidence.

    B.    <u>Trial</u>

Trial in this case began on October 18, 2017.  The prosecution's witnesses included Winchester, Detective DiDio, Officer Burke, other law enforcement investigators, and several individuals who had been at or near the Tex-Mex on the night of the crime.  When the prosecution rested, defense counsel requested a trial order of dismissal, which the trial court denied.  Petitioner's witnesses included himself, the friend who had gone with him to the Tex-Mex that evening, and petitioner's employer.

During his testimony, petitioner admitted to being at the Tex-Mex during the night of August 25, 2016, and into the morning of August 26, 2016.  He testified he wore a gray t-shirt that evening, and he positively identified himself as the individual shown in mugshot photos taken upon arrest.  Petitioner admitted he got into an argument with a woman in the early morning hours at the bar, and he then fought with Winchester.  However, petitioner denied possessing, firing, or owning a gun; he testified he had arrived unarmed that night and never left the Tex-Mex after Winchester searched him upon his initial entrance.  Petitioner testified he heard gunshots that night, but he did not know where they came from or who shot the gun.

On cross-examination, the prosecution elicited testimony from petitioner in which he said there was no violence in Yonkers, and he had never heard of "people bringing illegal things into bars," including weapons.  (Doc. #16-13 ("Trial Tr.") at 546–47).[3]  During a break in petitioner's

---

[3]     Citations to "Trial Tr. at __" refer to the page number at the top right-hand corner of each transcript page in the trial record.

testimony and outside the presence of the jury, the prosecution renewed its request to cross-examine petitioner about the 2013 shooting, arguing petitioner had opened the door by falsely testifying about the presence of guns in the area of the Tex-Mex and Yonkers generally.  The trial court ruled the evidence admissible, finding it was proper impeachment evidence and bore "upon why someone would have a gun if they've been the victim themselves of gun violence." (Id. at 554).  When petitioner's testimony resumed, the prosecution questioned him about the details of the 2013 shooting, which petitioner admitted.

At the conclusion of trial, on October 24, 2017, the jury found petitioner guilty of attempted assault in the first degree, criminal possession of a weapon in the second degree, reckless endangerment in the second degree, and obstructing governmental administration in the second degree.[4]  Defense counsel orally moved to set aside the verdict, which the trial court denied.

C.    Post-Trial Proceedings in State Court

On November 27, 2017, petitioner's trial counsel filed a written motion to set aside the verdict and for a new trial, pursuant to N.Y. Crim. Proc. Law § 330.30.  (Doc. #15-4).  By Decision and Order dated December 15, 2017, the trial court denied the motion.  (Doc. #15-6).

On December 18, 2017, the trial court sentenced petitioner to eight years' imprisonment followed by five years' post-release supervision on the first-degree attempted assault charge, eight years' imprisonment followed by five years' post-release supervision on the second-degree criminal possession of a weapon charge, one year of imprisonment on the second-degree reckless endangerment charge, and one year of imprisonment on the obstructing governmental

---

[4]    The indicted charges for criminal possession of a weapon in the second degree under N.Y. Penal Law § 265.03(1)(b), and for menacing were not submitted to the jury.

administration charge.  The trial court ordered the sentences to run concurrently, for a total term

of imprisonment of eight years, followed by five years' post-release supervision.

In May 2019, petitioner filed, through new appellate counsel, a direct appeal from his

criminal judgment in the Appellate Division, Second Department.  By Decision and Order dated

January 22, 2020, the Appellate Division denied petitioner's appeal and affirmed his conviction.

(Doc. #15-11); People v. Rosario, 179 A.D.3d 952 (2d Dep't 2020).

By letter from counsel dated February 7, 2020, petitioner sought leave from the New

York State Court of Appeals to appeal the Appellate Division's affirmance of his conviction.

(Doc. #15-12).  By Order dated April 23, 2020, the Court of Appeals denied petitioner's

application for leave to appeal.  (Doc. #15-14); People v. Rosario, 35 N.Y.3d 973 (2020).

D.      Post-Trial Proceedings in Federal Court

On June 26, 2020, petitioner filed a pro se petition for a writ of habeas corpus in the U.S.

District Court for the Northern District of New York.  (Doc. #1).  On July 15, 2020, that court

ordered that the case be transferred to this District because the petition challenged a conviction

and sentence imposed in Westchester County, which is in the Southern District of New York.

(Doc. #4).  The action was randomly assigned to the undersigned on July 17, 2020.  The case

was then referred by Order of Reference to Magistrate Judge Lisa Margaret Smith (Doc. #8), and

later redesignated to Magistrate Judge Andrew E. Krause upon Judge Smith's retirement.

Respondent filed an opposition to the petition on October 23, 2020 (Doc. #15), and

petitioner filed a reply in further support of the petition on January 7, 2021 (Doc. #20).  By Order

dated January 14, 2021, Judge Krause deemed petitioner's reply to be a motion for leave to

amend the petition to add additional grounds for habeas relief.  (Doc. #22).  Respondent opposed

the motion to amend on February 16, 2021 (Doc. #23), and petitioner filed a reply in support of the motion to amend on March 22, 2021 (Doc. #24).

By Order dated June 18, 2024, the undersigned vacated the Order of Reference. (Doc. #25). That Order was mailed to petitioner at his address on the docket, which was Franklin Correctional Facility in Malone, New York. On July 8, 2024, that mailing was returned to sender and marked "Not Deliverable As Addressed." Having no other contact information for petitioner, by Order dated July 9, 2024, the Court directed respondent's counsel to make a good-faith effort to locate him and to file a letter informing the Court whether they had any further information as to petitioner's current location, mailing address, or custody status. (Doc. #26). In its July 9, 2024, Order, the Court observed that a search of New York State's DOCCS Incarcerated Lookup website indicated petitioner was released from custody on June 30, 2023, with the following notation: "6/30/2023 PAROLE – COND REL IMMIGRATN." (Id.).

By letter dated August 16, 2024, respondent's counsel informed the Court that petitioner had indeed been released from Franklin Correctional Facility on June 30, 2023, for conditional release to U.S. Immigration and Customs Enforcement, pursuant to an order of removal issued by an immigration judge in Ulster Immigration Court. (Doc. #28). Petitioner was then deported from the United States to the Dominican Republic on July 18, 2023.

## DISCUSSION

I.    <u>Applicable Law</u>

"Habeas review is an extraordinary remedy." <u>Bousley v. United States</u>, 523 U.S. 614, 621 (1998).[5] The Court's authority to grant habeas relief to a person in custody pursuant to a

---

[5]    Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

state criminal judgment is set forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and

Effective Death Penalty Act of 1996, Pub. L. No. 104–132, 110 Stat. 1220 (Apr. 24, 1996)

("AEDPA").  Pursuant to AEDPA, before a federal district court may review the merits of the

state criminal judgment in a habeas action, it must first determine whether the petitioner has

complied with the procedural requirements set forth in 28 U.S.C. §§ 2244, 2254.  Contant v.

Sabol, 987 F. Supp. 2d 323, 345–46 (S.D.N.Y. 2013).  The Court discusses each of these

procedural requirements below.

    A.    Timeliness

Habeas petitions brought in federal court are subject to a one-year statute of limitations.

28 U.S.C. § 2244(d)(1).  The limitations period begins to run on the latest of four possible dates,

only one of which applies in the instant case—"the date on which the judgment became final by

the conclusion of direct review or the expiration of the time for seeking such review."  Id.

§ 2244(d)(1)(A).

The statute of limitations is tolled during the pendency of any "properly filed application

for State post-conviction or other collateral review" pertaining to the challenged judgment.  Id.

§ 2244(d)(2).  In addition, the limitations period may be equitably tolled, but only in "rare and

exceptional" cases.  Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000) (per curiam).  To justify

equitable tolling, a petitioner must show "(1) that he has been pursuing his rights diligently, and

(2) that some extraordinary circumstance stood in his way and prevented timely filing."  Holland

v. Florida, 560 U.S. 631, 649 (2010).

    B.    Exhaustion

The Court may not grant a habeas petition unless the petitioner has exhausted all

available state court remedies.  28 U.S.C. § 2254(b)(1)(A).  Exhaustion requires a petitioner to

fairly apprise the state courts of his constitutional claim by "presenting the essential factual and legal premises of his federal constitutional claim to the highest state court capable of reviewing it." Jackson v. Conway, 763 F.3d 115, 133 (2d Cir. 2014). Although a petitioner need not cite to specific provisions of the U.S. Constitution, he must present his claim "in terms that are likely to alert the state courts to the claim's federal nature." Id. A petition for discretionary review in a state's highest appellate court constitutes fair presentation for exhaustion purposes. O'Sullivan v. Boerckel, 526 U.S. 838, 839–40 (1999).

However, "a federal habeas court need not require that a federal claim be presented to a state court if it is clear the state court would hold the claim procedurally barred." Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991). In such a case, the Court may deem the federal claim "effectively exhausted" but barred from habeas review through procedural default. Reyes v. Keane, 118 F.3d 136, 139–40 (2d Cir. 1997). To avoid procedural default of an unexhausted claim, a petitioner must demonstrate "cause for the default and prejudice, or that failure to consider the claim will result in a miscarriage of justice." Id. at 138. The "miscarriage of justice" exception has been understood to apply when "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray v. Carrier, 477 U.S. 478, 496 (1986).

C.    Adequate and Independent State Grounds

Even if a federal claim is timely and exhausted, a federal habeas court will not review it on the merits if the last-reasoned state court decision addressing the claim "rests upon a state-law ground that is independent of the federal question and adequate to support the judgment." Cone v. Bell, 556 U.S. 449, 465 (2009).

A state court ruling is "independent" if it "fairly appears" primarily to rest on a state-law

ground.  <u>Jimenez v. Walker</u>, 458 F.3d 130, 138 (2d Cir. 2006).  Such a state-law ground is

"adequate" if it is "firmly established and regularly followed by the state in question."  <u>Garcia v.</u>

<u>Lewis</u>, 188 F.3d 71, 77 (2d Cir. 1999).

D.      <u>Standard of Review</u>

If the above procedural requirements are satisfied, the Court must apply AEDPA's

deferential standard of review to any claim "having been adjudicated on the merits by the state

court."  <u>Torres v. Berbary</u>, 340 F.3d 63, 68 (2d Cir. 2003).[6]  "[A] state court adjudicates a state

prisoner's federal claim on the merits when it (1) disposes of the claim 'on the merits,' and (2)

reduces its disposition to a judgment."  <u>Sellan v. Kuhlman</u>, 261 F.3d 303, 312 (2d Cir. 2001).

When AEDPA deference is triggered, the Court may only grant a habeas petition if the

state court adjudication of a claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of,
clearly established Federal law, as determined by the Supreme Court of the United
States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in
light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

As used in the statute, the phrase "clearly established federal law," means "the holdings,

as opposed to the dicta" of Supreme Court decisions "as of the time of the relevant state-court

decision."  <u>Williams v. Taylor</u>, 529 U.S. 362, 365 (2000).

A state court ruling is "contrary to such clearly established federal law if it applies a rule

that contradicts the governing law set forth in the Supreme Court's cases or if the state court

confronts a set of facts that are materially indistinguishable from a decision of the Supreme

---

[6]      If the state court's adjudication was not on the merits, "AEDPA deference is not
required," and "conclusions of law and mixed findings of fact and conclusions of law are
reviewed de novo."  <u>DeBerry v. Portuondo</u>, 403 F.3d 57, 66–67 (2d Cir. 2005).

Court and nevertheless arrives at a result different from its precedent." Lewis v. Conn. Comm'r of Corr., 790 F.3d 109, 121 (2d Cir. 2015).  An application of clearly established federal law occurs if a state court "identifies the correct governing legal principle" from the Supreme Court's decisions "but unreasonably applies that principle to the facts of the prisoner's case." Williams v. Taylor, 529 U.S. at 413.  In addition, "[a] federal habeas court must assume that all factual determinations made by the state court were correct unless the petitioner rebuts those findings by clear and convincing evidence." Lewis v. Conn. Comm'r of Corr., 790 F.3d at 120.

II.    Jurisdictional Issues

Although neither party has addressed jurisdiction, the Court has an obligation in every case to assure itself there is subject matter jurisdiction over the action.  See Muhammad v. City of N.Y. Dep't of Corrs., 126 F.3d 119, 122 (2d Cir. 1997).  Petitioner is no longer in state custody and has been removed from the United States.  Accordingly, before considering the merits of the petition, the Court must analyze whether his release from prison or deportation vitiates subject matter jurisdiction.

A.    "In Custody" Requirement

To invoke a district court's habeas jurisdiction, a petitioner must be "in custody" at the time the petition is filed as that term is used in 28 U.S.C. § 2254(a).  Maleng v. Cook, 490 U.S. 488, 490 (1989).  A petitioner's subsequent release does not on its own deprive a district court of subject matter jurisdiction.  Nowakowski v. New York, 835 F.3d 210, 217 (2d Cir. 2016).  Because at the time of filing petitioner was incarcerated in Franklin Correctional Facility pursuant to his conviction, he has satisfied the statutory "in custody" requirement.

B.    <u>Mootness</u>

"Unlike the 'in custody' requirement, mootness is not fixed at the time of filing but must be considered at every stage of the habeas proceeding." <u>Nowakowski v. New York</u>, 835 F.3d at 217.  A habeas petition "is not necessarily mooted when the petitioner is released from prison, as collateral consequences of that conviction may still impinge on the petitioner post-release, and therefore a case or controversy may continue to exist." <u>Perez v. Grenier</u>, 296 F.3d 123, 125 (2d Cir. 2002).  In addition, even if a petitioner has been released from prison, he is still subject to a sentence if his release is conditional, as in the case of parole or supervised release.  <u>Janakievski v. Exec. Dir., Rochester Psych. Ctr.</u>, 955 F.3d 314, 319 (2d Cir. 2020).  Under New York law, a parolee is still subject to post-release supervision for the remainder of his term.

Here, petitioner was released from prison on June 30, 2023, but the maximum expiration for his term of supervised release is not until May 1, 2027.  N.Y. State Dep't of Corrs. & Cmty. Supervision, <u>Incarcerated Lookup</u>, https://nysdoccslookup.doccs.ny.gov/ [https://perma.cc/GA9Q-SK6L] (last visited Sept. 2, 2024).  Because post-release supervision is a form of conditional release, petitioner is still subject to an unexpired sentence.  Moreover, "[u]nder New York law, a parolee remains subject to post-release supervision for the duration of the term of supervision even if that parolee is deported." <u>Wright v. U. PO</u>, 2021 WL 2779451, at *10 (E.D.N.Y. July 2, 2021).[7]  Therefore, were petitioner to return to the United States prior to May 1, 2027, he would be subject to post-release supervision as a result of the conviction challenged here.

---

[7]    Petitioner will be provided with copies of all unpublished decisions cited in this Opinion. <u>See</u> <u>Lebron v. Sanders</u>, 557 F.3d 76, 79 (2d Cir. 2009) (per curiam).

Accordingly, petitioner's deportation does not moot this action, and the Court has subject matter jurisdiction over the case.

III.   Claims Raised in Original Petition

At the outset, the Court concludes petitioner's original petition is timely.  Petitioner's judgment of conviction became final on April 23, 2020, when the New York Court of Appeals denied petitioner's application for leave to appeal.  (Doc.#15-14 at ECF 2).[8]  Petitioner initiated this action by filing a petition for writ of habeas corpus on June 26, 2020, within AEDPA's one-year statute of limitations.  (Doc. #1).

The petition asserts three claims for habeas relief:  (i) petitioner was denied a fair trial because the prosecution was permitted to introduce evidence that he had been a gun-shot victim; (ii) petitioner was denied a fair trial because the prosecution "deviated from acceptable legal standards and made inflammatory comments during summation that were prejudicial" (Doc. #1 at 5); and (iii) the trial court should not have permitted evidence of petitioner's identification by two eyewitnesses.

As set forth below, none of these grounds warrants habeas relief.

A.    Gun-Shot Victim Evidence

Petitioner argues the trial court erred in allowing the prosecution to cross-examine him about whether he had been the victim of a shooting in 2013 that occurred near the Tex-Mex. According to petitioner, victims of violent crime should be "accorded special deference by the state," but, in his case, petitioner's "status as a crime victim was used as mens rea to convict him three years later in an entirely unrelated proceeding."  (Doc. #1 at 5).

---

[8]      "ECF __" refers to page numbers automatically assigned by the Court's Electronic Case Filing System.

Petitioner presented this claim to the Appellate Division (see Doc. #15-7 at 29), which rejected it on the merits (Doc. #15-11 at 2).[9]  He then presented this claim to the Court of Appeals in a leave application, which was denied.  (Doc. #15-14 at ECF 2).  Therefore, this claim is exhausted, and AEDPA's deferential standard of review applies.

        1.    <u>Legal Standard</u>

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  <u>Estelle v. McGuire</u>, 502 U.S. 62, 68 (1991).  In other words, "it is not the province of a federal habeas court to reexamine state-court determinations of state-law questions."  <u>Davis v. Strack</u>, 270 F.3d 111, 123 (2d Cir. 2001).  Thus, a habeas petitioner alleging an erroneous state court evidentiary ruling must demonstrate the ruling violated an identifiable constitutional right.  See <u>Rosario v. Kuhlman</u>, 839 F.2d 918, 924 (2d Cir. 1988).

"Generally, rulings by state trial courts on evidentiary issues, even if erroneous, do not rise to the level of a Constitutional violation."  <u>Simmons v. Ross</u>, 965 F. Supp. 473, 480 (S.D.N.Y. 1997) (collecting cases).  Rather, an erroneous evidentiary ruling will support a writ of habeas corpus only if the petitioner "can show that the error deprived him of a <u>fundamentally</u> fair trial."  <u>Rosario v. Kuhlman</u>, 839 F.2d at 925.  For allegedly prejudicial evidence to amount to a denial of a fair trial, "the item must have been sufficiently material to provide the basis for

---

[9]      The Appellate Division did not specifically explain its reasons for rejecting petitioner's claim regarding the admission of the gun-shot victim evidence.  (Doc. #15-11 at 2 ("The defendant's remaining contentions are without merit.")).  However, Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'"  <u>Harrington v. Richter</u>, 562 U.S. 86, 100 (2011).  Thus, "in the absence of any indication or state-law procedural principles to the contrary," a state court's summary denial is presumed to be an adjudication on the merits.  <u>Id</u>. at 99.  Here, petitioner has offered no indication the Appellate Division's summary denial of his claim was anything other than a merits adjudication.

conviction or to remove a reasonable doubt that would have existed on the record without it." Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir. 1998), abrogated on other grounds by Perry v. New Hampshire, 565 U.S. 228 (2012).

          2.    Analysis

At the outset, the Court notes that the parties and the trial court at times suggested the gun-shot evidence at issue was the kind of prior bad act evidence subject to the rules of Sandoval, 24 N.Y.2d 371; People v. Molineux, 168 N.Y. 264 (1901) ("Molineux"); and/or People v. Ventimiglia, 52 N.Y.2d 350 (1981) ("Ventimiglia"). Sandoval, Molineux, and Ventimiglia are concerned with whether evidence of a defendant's prior crimes or bad acts may be admissible either for impeachment or to prove something other than his propensity to commit the crime charged. Olivo v. Graham, 2021 WL 3272080, at *2 n.4 (S.D.N.Y. Mar. 23, 2021). However, as the trial court also recognized, evidence petitioner was previously the victim of a gunshot (without more) establishes neither a prior bad act nor prior charged or uncharged criminal conduct. (Trial Tr. at 554 ("It does not go to a bad act.")). Thus, the challenged evidence was subject to the traditional "discretionary balancing of probative value and unfair prejudice." People v. Frankline, 27 N.Y.3d 1113, 1115 (2016). And, even if the gunshot evidence did establish a prior bad act, such evidence "may be admissible, as here, for background and to establish a defendant's motive." Id.

Here, on cross-examination, petitioner testified he had never known of weapons, including guns, being brought to bars in the Yonkers area, and that there was no violence in the neighborhood of the Tex-Mex. Thus, as the trial court concluded, evidence that petitioner had been shot in the neighborhood of the Tex-Mex several years prior was directly relevant to his credibility—i.e., whether the jury should credit his testimony that there was no violence in the

area and he had never known of weapons being used in the neighborhood.  It was also probative

of whether petitioner had a motive to possess a gun on the night of the charged crimes—i.e.,

whether, having been the victim of gun violence previously, petitioner would have been inclined

to carry a gun in the future for his own protection.  Moreover, the fact that petitioner was

previously the underline victim of a crime (rather than a perpetrator) is not, on its own, prejudicial.  Such

evidence was only prejudicial to petitioner insofar as it may have undermined his credibility or

supplied a motive for his possession of a weapon.

"[T]he trial court's decision to admit the evidence may not be disturbed simply because a

contrary determination could have been made or would have been reasonable.  Rather, it must

constitute an abuse of discretion as a matter of law."  People v. Morris, 21 N.Y.3d 588, 597

(2013).  Whether subject to a Sandoval/Molineux/Venitmiglia analysis or ordinary balancing

principles, the trial court did not abuse its discretion in permitting petitioner to be cross-

examined about his being a victim of a gunshot in 2013.  See People v. Frankline, 27 N.Y.3d at

1115 (noting Molineux evidence, although inadmissible "as evidence of a defendant's propensity

to commit the crimes charged," may be admissible "for background and to establish a

defendant's motive").

Moreover, even if the trial court's decision had been erroneous under state law, this error

did not rise to a constitutional magnitude.  The challenged evidence was not offered to prove an

essential element of any of the charges.  To the extent the gunshot victim evidence contradicted

petitioner's testimony, it did so as to a collateral issue—the safety and use of weapons in the area

of the Tex Mex.  In addition, although the jury could have inferred that petitioner's shooting

would prompt him to begin carrying a gun for safety, a reasonable juror could also have

concluded that petitioner's exposure to gun violence would deter petitioner from carrying a gun

in the future.  In sum, petitioner "has not shown that the admission of this evidence . . . deprived him of his right to a fundamentally fair trial or violated fundamental conceptions of justice." Olivo v. Graham, 2021 WL 3272080, at *16.

Accordingly, petitioner is not entitled to habeas relief on this ground.

B.    Inflammatory Comments on Summation

Next, petitioner argues certain allegedly inflammatory comments made by the prosecution during its summation rose to the level of prosecutorial misconduct such that petitioner was deprived of a fundamentally fair trial.

Petitioner presented this claim to the Appellate Division, which rejected it on the merits, holding "[m]ost of the challenged remarks were fair comment on the evidence or permissible rhetorical comment" and "[t]o the extent that some of the remarks were improper, they were not so flagrant or pervasive as to deprive the defendant of a fair trial."  (Doc. #15-11 at 2).  Petitioner also presented this claim to the Court of Appeals in his leave application, which was denied. Accordingly, this claim is exhausted and AEDPA's deferential standard of review applies.

1.    Legal Standard

"The appropriate standard of review for a claim of prosecutorial misconduct on a writ of habeas corpus is 'the narrow one of due process, and not the broad exercise of supervisory power.'"  Floyd v. Meachum, 907 F.2d 347, 353 (2d Cir. 1990) (quoting Darden v. Wainwright, 477 U.S. 168, 181 (1986)).  To demonstrate he is entitled to a writ of habeas corpus on this ground, petitioner must show "he suffered actual prejudice because the prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict."  Bentley v. Scully, 41 F.3d 818, 824 (2d Cir. 1994).  Within this framework, "[a]

prosecutor is not precluded from vigorous advocacy, or the use of colorful adjectives, in summation." United States v. Rivera, 971 F.2d 876, 884 (2d Cir. 1992).

In addition, the Court must assess any allegedly improper commentary "within the context of the trial." United States v. Young, 470 U.S. 1, 12 (1985). In other words, "[i]nappropriate prosecutorial comments, standing alone, would not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding." Id. at 11. Further, the Court must consider whether the prosecutor's challenged remarks were made in response to arguments a petitioner advanced during his case, including those raised in defense counsel's own closings. See id. at 12–14.

        2.    Analysis

As set forth above, petitioner challenges certain summation remarks, which he alleges improperly bolstered the credibility of the prosecution's witnesses, while "direct[ly] attack[ing]" petitioner's case and discrediting his own testimony. (Doc. #1 at 7).

First, the prosecutor did occasionally lapse into rhetoric or hyperbole. However, the comments petitioner challenges were, in each case, tied back to specific evidence. For instance, when asserting petitioner "wasn't truthful," the prosecutor referred the jury to particular instances in which petitioner's testimony was contradicted by other evidence. (Trial Tr. at 664 ("He told you he had never heard of people bringing weapons into the bars in that area of Yonkers. . . . And yet only a few years ago . . . on the same road, on South Broadway, he was at a bar where he was shot three times by another gun.")). To the extent some of the prosecutor's comments were ill-advised, they were argued from the four corners of the evidence.

Second, it was not improper for the prosecutor to focus on the credibility of witnesses given that defense counsel put witness credibility squarely at the center of the case. See United

States v. Peterson, 808 F.2d 969, 977 (2d Cir. 1987) ("Use of the words 'liar' or 'lie' to characterize disputed testimony when the witness's credibility is clearly in issue is ordinarily not improper unless such use is excessive or is likely to be inflammatory.").  Defense counsel spent the overwhelming majority of his closing arguments systematically attempting to discredit each of the state's witnesses.  Defense counsel repeatedly argued the prosecution's witnesses were lying or mistaken as to every relevant fact, even suggesting the state's witnesses were knowingly involved in a joint effort to convict petitioner for crimes he did not commit.  (Trial Tr. at 613 ("And I submit to you that the witnesses that you heard that work in the bar, that their testimony is just not believable."); id. at 648 (presenting "a motive as to why there's been an attempt to pin the prosecution for this gun discharge on the accused")).  Moreover, defense counsel argued throughout his summation that the case turned entirely on witness testimony and little else.  (Id. at 606 ("I'll just remind you that this is a case based on testimony."); id. at 630 ("I think it's important that since this case is based on testimony, that you hear the testimony.")).  Within this context, the prosecutor's extensive remarks about witness credibility were properly "responsive to arguments and theories presented in the defense summation."  Portes v. Capra, 420 F. Supp. 3d 49, 53 (E.D.N.Y. 2018); United States v. Tocco, 135 F.3d 116, 130 (2d Cir. 1998) ("Defendant cannot now complain about the issues raised and the atmosphere created by his own making through the defense summation.").

        Third, the trial court's instructions mitigated any risk of prejudice to petitioner from the prosecutor's comments.  The trial court explained to the jury that counsel's arguments and opinions could not be considered as evidence and that the jury's recollection, interpretation, and views of the evidence were controlling.  See Bradley v. Meachum, 918 F.2d 338, 341–44 (2d Cir. 1990).

Accordingly, having reviewed the transcript of the summations in its entirety, the Court concludes the prosecutor's comments did not substantially prejudice petitioner's right to a fair trial, and he is not entitled to habeas relief on this ground.

C.    Eyewitness Identification

The last claim in the petition asserts the trial court should not have permitted evidence of DiDio's and Winchester's point-out identifications of petitioner at the scene.

As explained below, this claim is procedurally barred, and petitioner has not made the showing necessary to overcome this procedural bar.

1.    Independent and Adequate State Ground

As set forth above (Section I.B), Section 2254(b) prohibits the granting of a habeas petition unless the petitioner first exhausts available remedies in state court. When presented with an unexhausted claim, a federal habeas court generally must either dismiss the petition without prejudice or stay the federal action so the petitioner may "return to state court to present the unexhausted claims to that court in the first instance." Rhines v. Weber, 544 U.S. 269, 274, 277–78 (2005).

Nevertheless, because Section 2254(b) only requires exhaustion of remedies still available at the time of the petition, the exhaustion requirement may be deemed "satisfied if it is clear that the habeas petitioner's claims are now procedurally barred under state law." Gray v. Netherland, 518 U.S. 152, 161 (1996). "However, the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents habeas corpus review of the defaulted claim." Id. at 162.

Such is the case here. Petitioner has not exhausted state remedies as to this claim because he did not present this claim to a state court on direct appeal or otherwise. New York law

permits criminal defendants only one direct appeal.  Spence v. Superintendent, 219 F.3d 162,

170 (2d Cir. 2000).  Having perfected his direct appeal, petitioner may not now return to the

Appellate Division to raise this claim for the first time.  Id.  Moreover, petitioner would be

barred from raising this claim collaterally through a motion to vacate the judgment.  Under New

York law, a criminal defendant is barred from raising a claim on collateral review if the claim is

a matter of record and the defendant unjustifiably fails to present it on direct appeal.  See N.Y.

Crim. Proc. Law § 440.10(2)(c).  Here, petitioner's claim regarding his identification is based on

the trial court's oral and written rulings—i.e., matters appearing in the record.  Therefore, were

he to return to state court, petitioner would be unable to raise this claim on collateral or direct

review.  See Sweet v. Bennett, 353 F.3d 135, 139–40 (2d Cir. 2003).

Accordingly, this claim is procedurally defaulted for purposes of federal habeas review.

2.    Overcoming Procedural Default

A petitioner may overcome a procedural default by showing both cause for the default

and actual prejudice, or that the failure to consider the claim would result in a fundamental

miscarriage of justice.  Coleman v. Thompson, 501 U.S. 722, 748 (1991).  As the Supreme Court

has explained, "[t]he fundamental miscarriage of justice exception is available only where the

prisoner supplements his constitutional claim with a colorable showing of factual innocence."

Herrera v. Collins, 506 U.S. 390, 404 (1993).  And, "a substantial claim that constitutional error

has caused the conviction of an innocent person is extremely rare and must be supported by new

reliable evidence that was not presented at trial, evidence obviously unavailable in the vast

majority of cases."  Schlup v. Delo, 513 U.S. 298, 299 (1995).

Here, petitioner has made no showing of cause for his failure to exhaust his claim regarding the eyewitness identifications.[10]  Moreover, the purported new evidence petitioner cites in support of his actual innocence claim is insufficient to cast doubt on the jury's verdict. Petitioner claims the jury should have (but did not) receive evidence that:  (i) Officer DiDio received enhanced retirement benefits by claiming he injured his knee during the incident at the Tex-Mex; (ii) at the time petitioner's previous counsel submitted a motion—the contents of which the prosecution used to cross-examine petitioner at trial—petitioner had been found incompetent and lacking the capacity to assist in his own defense; and (iii) petitioner has a speech impediment that may have made him appear nervous to the jury when he testified.

Even assuming this evidence is properly understood as "new," it does not undermine confidence in petitioner's conviction.[11]  A gateway actual innocence claim requires evidence "sufficiently credible and compelling to allow a federal court to conclude that more likely than

---

[10]    Throughout his reply, petitioner makes various conclusory statements about his trial counsel being ineffective. (See Doc. #20 at 8, 9 n.7.)  To the extent petitioner intended to assert that ineffective assistance of counsel was the cause for his procedural default on this claim, he has not supported this argument with any particularized facts.  Without more, "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default."  Murray v. Carrier, 477 U.S. 478, 486 (1986).

[11]    This evidence is not "newly discovered" in that it was reasonably available to petitioner and his counsel at the time of trial.  However, it is arguably "newly presented" because it was not presented to the jury.  The courts of appeal are split "on whether 'new' includes only 'newly discovered' evidence—evidence that was not available at the time of trial—or more broadly encompasses 'newly presented' evidence—all evidence that was not presented to the jury during trial."  Lopez v. Miller, 915 F. Supp. 2d 373, 400 n.16 (E.D.N.Y. Jan. 16, 2013) (collecting cases).  Although the Second Circuit has not expressly weighed in on this issue, it has referred to "new evidence" in the context of an actual innocence claim as "evidence not heard by the jury." Rivas v. Fischer, 687 F.3d 514, 543 (2d Cir. 2012); but see Jimenez v. Stanford, 96 F.4th 164, 184 n.23 (2d Cir. 2024) (declining to address whether new evidence "constitute[s] newly discovered evidence").  Out of caution and in consideration of petitioner's pro se status, the Court assumes without deciding that the broader, "newly presented evidence" standard is applied in this Circuit.

not, in light of the new evidence, no reasonable juror would find petitioner guilty beyond a reasonable doubt." Hyman v. Brown, 927 F.3d 639, 657 (2d Cir. 2019). Here, none of the new evidence bears on any element of the crimes charged, it does not implicate another individual, and it does not cast any meaningful doubt on the other evidence used to support petitioner's guilt. At best, the new evidence goes to witness credibility issues. This is not sufficient to meet the extremely demanding standard of actual innocence necessary to overcome a procedural default. Cf. Jimenez v. Stanford, 96 F.4th at 185–86 (explaining a finding of "compelling evidence of innocence comes through a combination of eyewitness misidentification, testimony and forensic evidence ruling out the petitioner's ability to commit the crime, and evidence strongly incriminating a third party").

In sum, petitioner's eyewitness identification claim is procedurally defaulted, and he has not made a sufficient showing to overcome that default. Accordingly, petitioner is not entitled to habeas relief on this ground.

IV.     Motion for Leave to Amend

By Order dated January 14, 2021, the Court deemed petitioner's reply in support of the original petition to be a motion for leave to amend to add new claims. (Doc. #22). Specifically, the Court construed the reply to seek the addition of claims that: (i) the jury should have received evidence regarding a pretrial ruling concerning petitioner's mental capacity to aid in his defense; (ii) the jury should have received evidence petitioner has a speech impediment; (iii) the verdict was against the weight of the evidence; (iv) the verdict was not supported by legally sufficient evidence; (v) petitioner is actually innocent; and (vi) petitioner was denied the effective assistance of trial counsel.

Motions to amend a habeas petition are governed by Rule 15, which provides the Court should "freely give leave" to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2); Littlejohn v. Artuz, 271 F.3d 360, 363 (2d Cir. 2001). However, in the habeas context, district courts "retain the discretion to deny that leave to thwart tactics that are dilatory, unfairly prejudicial or otherwise abusive." Id. And, as with any motion under Rule 15(a)(2), leave should be denied when there is "evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility." Monahan v. N.Y.C Dep't of Corrs., 214 F.3d 275, 283 (2d Cir. 2000). An amendment is futile when, as a matter of law, the proposed pleading would not survive a Rule 12(b)(6) motion to dismiss. Lucente v. Int'l Bus. Machs. Corp., 310 F.3d 243, 258 (2d Cir. 2002).

As explained below, even if the Court were to permit the addition of the proposed claims, such claims would fail on the merits and therefore amendment is futile.

A.    Unexhausted Claims

Petitioner's claims that (i) the jury should have heard evidence that he was previously found incompetent to aid in his defense, (ii) the jury should have heard evidence he has a speech impediment, and (iii) he received ineffective assistance of trial counsel are unexhausted. The Court addresses the futility of amendment as to each of these three claims below.

1.    Evidence of Mental Capacity Finding

Petitioner's claim that the jury should have heard evidence that he had previously been found incompetent to aid in his defense is futile because it is procedurally defaulted. Although petitioner did raise this issue in a motion to set aside the verdict pursuant to N.Y. Crim. Proc. Law § 330.30, he subsequently abandoned any such claim on direct appeal. Petitioner's failure to present "the essential factual and legal premises" of this claim "to the highest state court

26

capable of reviewing it," means he has not exhausted available state remedies for purposes of habeas review.  Jackson v. Conway, 763 F.3d at 133.

In addition, petitioner no longer has any available state remedy to raise this claim.  As discussed above, having perfected his direct appeal, petitioner may not return to the Appellate Division to present this argument for the first time.  (See Section III.C.1).  And, because this claim depends on information contained within the record (see Hearing Tr. at 43–45), petitioner's unjustifiable failure to present this issue on direct appeal also bars him from raising it in a collateral attack.  See Sweet v. Bennett, 353 F.3d at 139–40.  Thus, this claim is procedurally defaulted.  Further, petitioner has shown no cause for his failure to exhaust this claim and, as discussed above, he has not made out a gateway claim of actual innocence sufficient to overcome a procedural default.  (See Section III.C.2).

Accordingly, leave to amend to add this claim would be futile because the Court would dismiss it for procedural default.

2.   Evidence of Speech Impediment and Ineffective Assistance of Trial Counsel

Petitioner's claims that (i) the jury should have heard evidence petitioner has a speech impediment, and (ii) that his trial counsel was constitutionally ineffective, are futile because he has not shown he would be entitled to a stay of the petition to exhaust these claims on collateral review in state court.[12]

---

[12]     The Court notes the trial transcript reveals that, on direct examination, petitioner did in fact tell the jury he "stutter[s]" when he speaks.  (Trial Tr. at 527).  However, because petitioner is proceeding pro se and he has not explained the precise speech impediment evidence he believes should have been admitted, the Court will assume for the purposes of the motion that petitioner contends some other or additional evidence of his speech impediment should have been presented to the jury.

Petitioner never raised these claims in state court.  The claims are therefore unexhausted.

Nevertheless, although petitioner would be unable to raise these claims for the first time on direct

appeal, they may be cognizable on collateral review through a Section 440.10 motion, which

may be brought at any time to challenge a judgment on the basis of evidence that does not appear

in the record.  See N.Y. Crim. Proc. Law § 440.10; Burnett v. Lee, 2015 WL 4389888, at *10

(E.D.N.Y. July 15, 2015).

To the Court's knowledge, petitioner's speech impediment claim was never addressed on

the record in the trial court, and therefore could be the subject of a Section 410.10 motion.

Petitioner's ineffective assistance of counsel claim relies in part on matters in the record

(counsel's failure to object to certain errors at trial and to adequately cross-examine witnesses)

and matters outside the record (counsel's failure to investigate a proposed juror's background).

New York courts have held Section 440.10 motions involving ineffective assistance claims based

on a mix of matters in the record and outside of the record are not procedurally barred.  Pierotti

v. Walsh, 834 F.3d 171, 178 (2d Cir. 2016) ("[S]uch a mixed claim, presented in a Section

440.10 motion, is not procedurally barred.").

Because these claims are not procedurally defaulted, were they added to the petition, the

Court would have the discretion to stay this action and hold it in abeyance while petitioner

exhausts his remedies by filing a Section 440.10 motion.  Rhines v. Weber, 544 U.S. at 276.

However, the Supreme Court has held "stay and abeyance should be available only in limited

circumstances."  Id. at 277.  Specifically, a stay is only appropriate if the Court determines there

was good cause for the petitioner's failure to exhaust the claims and the unexhausted claims are

not "plainly meritless."  Id.  "Although the Supreme Court did not define 'good cause' in Rhines,

lower courts have determined that it requires a showing of either (1) some factor external to the

petitioner that gave rise to the default or (2) reasonable confusion, which is more forgiving and incorporates subjective reasons for the delay in seeking state relief." Morris v. Bennett, 2023 WL 8435931, at *3 (E.D.N.Y. Dec. 5, 2023).

Here, petitioner has made no showing of good cause for his failure to exhaust these claims. Indeed, on reply in support of his motion for leave to amend, petitioner concedes he "asserts no grounds for failing to exhaust his claims in state court." (Doc. #24 at ECF 3). Therefore, petitioner would not be entitled to a stay of this action and the Court would have to dismiss these claims for failure to exhaust.

Accordingly, it would be futile to permit petitioner to amend the petition to add claims regarding evidence of his speech impediment and the ineffective assistance of trial counsel.

B.    Weight of the Evidence

To the extent petitioner seeks leave to add a claim that the verdict was against the weight of the evidence, such a claim is not cognizable on federal habeas review.

Although a claim that the evidence was legally insufficient is based on federal due process principles, a challenge to a verdict based on the weight of the evidence is strictly a state law claim. Douglas v. Portuondo, 232 F. Supp. 2d 106, 115–16 (S.D.N.Y. 2002). A federal court reviewing the record on a habeas petition "must defer to the jury's assessments of both the weight of the evidence and the credibility of the witnesses." United States v. Parker, 903 F.2d 91, 97 (2d Cir. 1990).

Accordingly, because habeas relief is unavailable for pure errors of state law, see Estelle v. McGuire, 502 U.S. at 68, amendment to add a weight-of-the-evidence claim would be futile.

C.    <u>Legal Insufficiency</u>

Petitioner's claim that the evidence was legally insufficient to support a guilty verdict is meritless and amendment to add such a claim would be futile.

On direct appeal, petitioner argued to both the Appellate Division and the Court of Appeals that his guilt had not been established beyond a reasonable doubt.  (Doc. #15-8 at 50). The Appellate Division rejected this claim on the merits and the Court of Appeals denied leave to appeal.  Therefore, this claim is exhausted and AEDPA's deferential standard of review would apply on a motion to dismiss.

When reviewing a legal insufficiency challenge, the Court must ask "whether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979).  Applying this standard, the Court cannot conclude the Appellate Division's finding of legal sufficiency was unreasonable.

At trial, multiple eyewitnesses testified they observed petitioner possess and discharge a gun in the Tex-Mex.  Other witnesses testified that, although they did not actually see petitioner holding or firing the gun, they saw him engage in a struggle with Mr. Winchester immediately prior to a gun being discharged in petitioner's vicinity.  In testifying, petitioner conceded he was at the Tex-Mex that night and that he got into an altercation with Winchester.  Crucially, the trial record contains no substantial credible evidence anyone other than petitioner possessed or fired the gun on the night in question.

In support of his legal insufficiency claim, petitioner repeats a list of minor inconsistencies or factual discrepancies in various witnesses' testimony, all of which were explored by his counsel during trial.  In addition, petitioner reiterates that certain prosecution

witnesses were not credible because of their prior criminal histories—facts defense counsel addressed exhaustively in front of the jury. Lastly, petitioner argues the absence of forensic or video evidence unequivocally demonstrating his guilt proves he could not have been responsible for possessing or firing a gun that night, an argument defense counsel strenuously advanced on summation.

In sum, all of petitioner's arguments go to the weight and not the legal sufficiency of the evidence. See Taylor v. Poole, 538 F. Supp. 2d 612, 619 (S.D.N.Y. 2008). It is the jury's duty "fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson v. Virginia, 443 U.S. at 319. In light of the trial record here, petitioner has not demonstrated there was insufficient evidence to support his conviction.

Accordingly, it would be futile to permit petitioner to amend the petition to add this claim.

D.    Actual Innocence

Lastly, petitioner's proposed freestanding claim of actual innocence is meritless. In Herrera v. Collins, the Supreme Court recognized a distinction between a gateway claim of actual innocence—by which a petitioner seeks to excuse his procedural default to bring an independent constitutional claim challenging his conviction—and a freestanding claim of actual innocence—by which a petitioner argues newly discovered evidence shows his conviction is unconstitutional because it is factually incorrect. 506 U.S. at 404–05. Although the Supreme Court has never articulated the precise standard of proof required to show factual innocence, it has clarified that "whatever burden a hypothetical freestanding innocence claim would require"

must be greater than the compelling evidence needed to establish a gateway claim.  House v. Bell, 547 U.S. 518, 555 (2006).

As discussed above, petitioner has not pointed to new evidence sufficient to meet the gateway actual innocence standard to overcome a procedural default.  (See Section III.C.2). Because his freestanding actual innocence claim would require even greater proof of innocence, it necessarily follows that petitioner cannot meet the higher standard applicable to this claim.

Accordingly, it would be futile to grant petitioner leave to add a freestanding claim of actual innocence to the petition.[13]

## CONCLUSION

The petition for a writ of habeas corpus and the motion for leave to amend the petition are DENIED.

As petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue.  See 28 U.S.C. § 2253(c)(2); Love v. McCray, 413 F.3d 192, 195 (2d Cir. 2005).

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal.  See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

---

[13]     Petitioner's reply in support of his motion for leave to amend arguably raises even more additional grounds for habeas relief not mentioned in the petition or the motion for leave to amend.  For example, petitioner argues for the first time in this action that his trial counsel failed adequately to investigate the absence of surveillance video tape from the Tex-Mex and failed to object to hearsay evidence that surveillance cameras were not working on the night in question. (Doc. #24 at 5).  The Court concludes that to allow petitioner to raise these new claims on reply would undermine AEDPA's purpose of preventing abuse of the writ by piecemeal litigation of claims.  See Littlejohn v. Artuz, 271 F.3d at 363.  Accordingly, petitioner is denied leave to amend to add any new claims arguably alleged for the first time in petitioner's reply in support of his motion for leave to amend.

The Clerk is instructed to enter Judgment accordingly and close this case.

Chambers will mail a copy of this Opinion and Order and all unpublished decisions cited herein to petitioner at the address on the docket.

Dated: October 11, 2024
      White Plains, NY

                                    SO ORDERED:

                                      Vincent L. Briccetti
                                      United States District Judge